UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                    Case No. 8:04-cr-239-T-23EAJ
                                                                                  8:06-cv-1366-T-23EAJ
FRANKIE LEE BRYANT,
_____/

**REPORT AND RECOMMENDATION**

The Honorable Steven D. Merryday referred (Doc. 8) Bryant's "Motion Under 28 U.S.C. § 2255 to Vacate Sentence" (Doc. 1) for this court to conduct an evidentiary hearing and to file a report and recommendation on Bryant's claim that trial counsel rendered ineffective assistance by not filing a notice of appeal. The Federal Public Defender was appointed (Doc. 10) to represent Bryant.

A summary of the criminal proceeding is required to fully understand the issue presented in Bryant's motion to vacate sentence. The initial indictment charged Bryant, a convicted felon, of possessing two firearms and ammunition. The undersigned's Report and Recommendation (Doc. 28) recommended the granting of Bryant's motion to suppress evidence because of a violation of Bryant's Fourth Amendment rights, a recommendation the district judge declined (Doc. 38). Thereafter, Bryant's motion to suppress was denied (Doc. 42). A superseding information (Doc. 43) charged Bryant with the lesser charge of knowingly possessing a stolen firearm contrary to 18 U.S.C. § 922(j). The next day Bryant filed his plea agreement to the lesser charge. See Plea Agreement (Doc. 44). The plea

agreement contemplated Bryant's receiving both a three-level reduction for acceptance of responsibility and a low-end sentence.  Plea Agreement at ¶7, p.3 and ¶9, p.4, respectively (Doc. 44).  The plea agreement included the appeal waiver that is standard in this district.  Plea Agreement at ¶5, p.13 (Doc. 44).  While free on bond awaiting sentencing, Bryant was arrested for grand theft of a motor vehicle and burglary of a dwelling (Doc. 53).  Bryant's release pending sentencing was reinstated (Doc. 61).  Bryant was arrested again and charged with, inter alia, possessing cocaine and obstructing an officer with violence (Doc. 68).  Thereafter Bryant was detained pending sentencing.  The presentence investigation report rejected crediting Bryant with a three-level reduction for acceptance of responsibility because of Bryant's repeated arrests while on bond.  Presentence Investigation Report, ¶15 and ¶23 at p.6-7.  The district judge expressed initially intending to sentence Bryant to the statutory maximum of ten years, but after considering the arguments of Bryant's counsel and the comments by the United States, Bryant was sentenced to ninety-two months, which was the low-end of the guideline range of 92-110 months for an Offense Level 26, Criminal History IV, without a three-level reduction for acceptance of responsibility.  Transcript of Sentencing at 29-30 (Doc. 75).

Bryant's claim that counsel rendered ineffective assistance by not filing a notice of appeal was not alleged in either the initial motion to vacate sentence (Doc. 1) or the supporting memorandum (Doc. 2).  Bryant added this claim in a motion to amend (Doc. 5) filed approximately six months after this action commenced.  Bryant admits in his motion to amend that he learned about this additional issue after "the law library clerks at FCC-Coleman Medium assisted [him] in researching his case and directed him to the recent

decision by the Eleventh Circuit Court of Appeals in Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005)."  Motion to Amend at 2 (Doc. 5).

## Findings of Fact

At the evidentiary hearing three witnesses testified:  Bryant, Eric Kuske (Bryant's trial counsel), and Demetrius Hicks (the mother of Bryant's children).  Having considered the testimony of the witnesses, the court finds the following facts are supported by a preponderance of the credible evidence:

1.      Bryant is the father of some of Hicks's children.  Transcript of Evidentiary Hearing (hereinafter "Transcript") at 5 (Doc. 21).  Bryant regularly conversed with Hicks while the federal charges were pending.  Transcript at 14.  Hicks did not attend any of Bryant's federal proceedings;  Bryant and his girlfriend, who attended the proceedings, kept Hicks informed on the progress of the case.  Transcript at 12-13.

2.      Kuske had a "great relationship" with Bryant, whom Kuske had represented for many years in state proceedings.  Kuske viewed Bryant as "a good client, always a gentleman" whom Kuske "wish[ed] him the best" and "like[d] . . . a whole lot," a client with whom Kuske "never had an argument, never had a problem."  Transcript at 35 and 46. Bryant agreed that he and Kuske had a good relationship and that he was satisfied with Kuske's representation in the state proceedings.  Transcript at 33.  Hicks testified that Bryant never complained to her about Kuske's representation until after sentencing. Transcript at 15.

3.      Kuske "experienced some success on this case" both in "defeating" state charges (which were based on the same event that formed the basis for the federal

charges) and in initially succeeding with a motion to suppress (a decision that was overturned) in the federal proceeding.  Transcript at 35.

4. Deciding whether to plead guilty or proceed to trial and appeal the denial of the motion to suppress was the "crux of the whole issue" because of the appellate waiver in the plea agreement.  Transcript at 36 and 44.  Kuske and Bryant thoroughly discussed the appeal waiver prior to accepting the plea agreement.  Transcript at 44.  Kuske and Bryant went "back and forth about what to do" because "the appeal issue was kind of a sticky point whether we would go forward with [the plea agreement] or not, again, if we take [the plea agreement] we can't appeal, if we go to trial we preserve the right to appeal."  Transcript at 36.  Regarding whether to appeal, Kuske has no recollection of discussing that issue with Bryant after the entry of plea.  Transcript at 44-45.

5. Kuske and Bryant conversed telephonically approximately a month or more after sentencing.  Kuske has no specific recollection of the content of the conversation, Transcript at 37, but is certain that Bryant did not request Kuske to do anything on his behalf.  Transcript at 45.  A request to appeal is "one of the big things" that would "stand out" and upon which Kuske would have acted.  Transcript at 44.

6. Sometime after sentencing (how long after sentencing is unknown), Hicks encountered Kuske at the Falkenburg jail, where she was visiting her daughter's father. Hicks and Kuske briefly discussed Bryant but Hicks did not question Kuske about an appeal because she was angry with him.  She did ask why Kuske "gave up on us."  Transcript at 10-12 and 16.

> 7. Kuske would have timely filed a notice of appeal if Bryant had so requested, but Kuske never understood Bryant to request the filing of an appeal. Transcript at 38, 44, 45-46 and 50. In Kuske's opinion, the appeal waiver precluded an appeal. Transcript at 46
>
> 8. Kuske did not, after the imposition of sentence, consult with Bryant about whether to file a notice of appeal. The preponderance of credible evidence shows that Bryant did not request Kuske to file a notice of appeal.[1]

## Analysis

Three cases principally control the analysis of Bryant's claim: <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 476-77 (2000); <u>Otero v. United States</u>, 499 F.3d 1267 (11th Cir. 2007), and <u>Thompson v. United States</u>, 503 F.3d 1203 (11th Cir. 2007).

Bryant claims that his defense counsel was ineffective for not filing a notice of appeal. Bryant must meet the test established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984):

> [F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

<u>Sims v. Singletary</u>, 155 F.3d 1297, 1305 (11th Cir. 1998) (citations omitted). <u>Strickland</u>'s two-prong test governs claims that counsel was ineffective for not filing an appeal. <u>Roe v. Flores-Ortega</u>, 528 U.S. at 476-77. <u>Flores-Ortega</u> recognized three categories of claims: (1)

---

[1] Any testimony to the contrary is not credible. Bryant's credibility on this issue is flawed because Bryant testified (incredibly) that both the prosecutor and Kuske promised that Bryant would receive a three to five year sentence if convicted. Transcript at 19, 26.

Bryant's claim of a three to five year sentence equals a guideline range of 36-60 months. Even if Bryant received the three-level reduction for acceptance of responsibility, the guideline range for an Offense Level 23, Criminal History IV, is 70-87 months.

counsel fails to file an appeal even though the defendant unquestionably expresses his desire to appeal,[2] (2) the defendant faults counsel for not appealing even though the defendant stated that he did not want an appeal,[3] and (3) the defendant's desire to appeal is not clearly expressed.[4]

### A. Was Bryant's Desire For An Appeal Clearly Expressed?

At the evidentiary hearing, Bryant testified that, immediately after sentencing and before leaving the courtroom, he specifically directed defense counsel to file an appeal. Defense counsel testified that he has no recollection of such a request and that he would have filed an appeal if Bryant had requested. Because the witnesses dispute whether Bryant requested an appeal, Bryant did not unquestionably request an appeal. Consequently, this case falls into Flores-Ortega's third category in which Bryant's desire to appeal was not clearly expressed. Flores-Ortega provides guidance on how to proceed:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable

---

[2] Roe v. Flores-Ortega, 528 U.S. at 477 ("[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.").

[3] Roe v. Flores-Ortega, 528 U.S. at 477. ("At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").

[4] Roe v. Flores-Ortega, 528 U.S. at 477 ("Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?").

> effort to discover the defendant's wishes.  If counsel has consulted with the defendant, the question of deficient performance is easily answered:  Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.  . . .  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question:  whether counsel's failure to consult with the defendant itself constitutes deficient performance.  That question lies at the heart of this case:  Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

Roe v. Flores-Ortega, 528 U.S. at 478.

### B. Did Kuske Have A Constitutional Duty To Consult Bryant About Appealing?

Consulting a client about appealing is not constitutionally required in every case.  "We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient."  Roe v. Flores-Ortega, 528 U.S. at 479 (emphasis original).  See also, Otero v. United States, 499 F.3d at 1270 ("A criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal.  In some cases, the Sixth Amendment requires such consultation; in others, it does not.").  Flores-Ortega identifies two situations where counsel is constitutionally required to consult the client about appealing.

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all the information counsel knew or should have known.

528 U.S. at 480.

#### 1. Did Bryant Reasonably Demonstrate An Interest In Appealing?

The second of these two situations is easily resolved.  Based on the testimony at the

evidentiary hearing, the preponderance of the credible evidence indicates that Bryant never requested Kuske to appeal and Kuske never understood Bryant to request an appeal. The first situation, however, requires deeper analysis.

### 2. Would A Rational Defendant Want To Appeal?

A "highly relevant factor" for consideration—in determining whether a rational defendant in Bryant's situation would want to appeal—is whether the defendant plead guilty and waived his appellate rights.

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Flores-Ortega, 528 U.S. at 480. Bryant specifically agreed to waive his right to appeal any issue except three discrete ones. Plea Agreement at 13 (Doc. 44). Prior to the guilty plea hearing, Kuske and Bryant discussed the appeal waiver at length, going "back and forth about what to do" because the appeal waiver was the "crux of the whole issue." Bryant's plea agreement anticipated a three-level reduction for acceptance of responsibility, a reduction rejected at sentencing. Bryant is solely responsible for the loss of the reduction because he continued engaging in illegal activities while awaiting sentencing. Six months elapsed between entry of plea and sentencing, during which time Bryant's bond was revoked when he was arrested for grand theft of a motor vehicle and burglary of a dwelling. Bond was revoked a second time when he was arrested for possessing cocaine and

- 8 -

obstructing an officer with violence. Bryant knew before sentencing that the presentence report recommended denying Bryant the three-level reduction for acceptance of responsibility. Whether to grant Bryant the reduction for acceptance of responsibility was discussed at length during sentencing. Transcript of Sentencing at 15-19 (Doc. 75). The district court lectured Bryant that the harshness of the sentence was caused by his own actions. Transcript of Sentence at 20-30 (Doc. 75). Bryant would likely have received the reduction for acceptance of responsibility, as anticipated in the plea agreement, but for his post-plea illegal activities. In any event, Bryant was sentenced at the low end of the guideline range and below the statutory ten-year maximum penalty.

Unquestionably Bryant was disappointed with his sentence, a feeling Kuske shared. Transcript at 43. But Bryant knew, or had to know, that, by pleading guilty and waiving his right to appeal, he was forfeiting any challenge to the calculation of the sentence guidelines. Before accepting his plea, this court ensured both that Bryant understood the preclusive effects of waiving his right to appeal, Transcript of Change of Plea at 15-24 (Doc. 76), and that Bryant was specifically waiving his right to appeal the trial court's calculation of sentence:

> The Court: Do you understand that this appeal waiver part of your plea agreement limits your right to challenge your sentence on certain issues? Do you understand that?
>
> The Defendant: Yes.
>
> The Court: So it's part of your agreement with the government but you need to be aware that it may prevent you from appealing or challenging how the judge sentences you and to what extent the judge used the sentencing guidelines. Do you understand that?

> The Defendant: Yeah.
>
> The Court: Do you have any questions at all?
>
> The Defendant: No, ma'am.
>
> The Court: Are you satisfied your client understands it, Mr. Kuske?
>
> Mr. Kuske: Yes, Your Honor. We have been together — actually this case has been going on for a couple years now. We have gone over this many, many times.
>
> . . .
>
> The Court: It could be that the sentence that the judge imposes could be different from what your attorney has predicted that you might get. Do you understand that?
>
> The Defendant: Yes, ma'am.
>
> The Court: If your sentence that you receive is different from what you expect for any reason including a prediction from your attorney, you can't change your mind about pleading guilty. You have to accept the consequences. Do you understand that?
>
> The Defendant: Yes, ma'am.

Transcript of Change of Plea at 17-18, 21-22 (Doc. 76). Based on these facts, a rational defendant would know that he could not appeal unless specifically authorized by the plea agreement.

Bryant's situation is not an exact fit with precedent. In Flores-Ortega, the public defender's notes affirmatively implied that the defendant had expressed an interest in appealing:

> We conclude that Flores reasonably demonstrated an interest in filing an appeal, thereby creating a duty for the public defender to consult with Flores on whether to file an appeal. The fact that the public defender wrote a note to

> herself to "bring appeal papers" on the front of Flores' sentencing report shows that Flores had demonstrated an interest in filing an appeal. The public defender's testimony that she is unable specifically to recall the discussion with Flores is just that-a failure of recollection. It is insufficient to overcome the clear and logical inference to be drawn from her note. Further, the public defender's testimony that she routinely brings appeal papers to sentencing hearings reinforces this inference. It seems unlikely that she would go out of her way to write a note reminding herself in this particular case to "bring appeal papers," if she routinely does so, unless Flores had demonstrated an interest in filing an appeal.

Flores-Ortega v. Roe, 39 Fed. Appx. 604, 605-06 (9th Cir. 2002).[5]  Because Flores-Ortega had expressed an interest in filing an appeal, trial counsel had a constitutionally imposed duty to make a reasonable effort to discover the defendant's wishes.   Flores-Ortega is further distinguishable because the plea was not pursuant to a plea agreement and, as a consequence, an appeal waiver was not involved.

Thompson v. United States, 503 F.3d 1203 (11th Cir. 2007), is also distinguishable. After the imposition of sentence, Thompson expressed an interest in appealing because he did not receive the same minor role reduction the co-defendants received.

> Counsel testified that right after sentence was imposed, Thompson was "unhappy" with his sentence, as compared to that of his co-defendants, and "asked him about why the Judge told him he had a right to appeal if he had pled guilty."  Counsel reiterated that Thompson had a right to appeal, only adding that he did not think an appeal would be successful or worthwhile. Thompson then said "fine."   This exchange, which lasted no more than five minutes, consisted simply of notifying Thompson of the right to appeal (as the judge had already done) and Counsel's opinion that such an appeal would not be successful.  Counsel did not explain the appellate process or the advantages and disadvantages of taking an appeal, nor that he was obligated to file an appeal if that is what Thompson wanted, regardless of his recommendation.

---

[5]  This decision is following the remand in Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000).

Thompson v. United States, 503 F.3d at 1207.  Because immediately after sentencing Thompson questioned his counsel about the right to appeal, "counsel had a clear duty to consult with Thompson."  As determined above, the preponderance of the credible evidence shows that Bryant did not question Kuske about appealing.  Thompson is further distinguishable because the opinion states "it was undisputed that Counsel did not discuss Thompson's appellate rights prior to sentencing."   To the contrary, Kuske and Bryant discussed the appeal waiver and defendant's appellate rights at length before Bryant signed the plea agreement.

Otero v. United States, 499 F.3d 1267 (11th Cir. 2007), is factually the closest to Bryant's situation.  The similarities include: (1) Otero's plea agreement contained an appeal waiver identical to Bryant's,[6]  (2) Otero and his defense counsel discussed the appeal waiver several times prior to pleading guilty but no additional consultation on the topic occurred after the imposition of sentence, and (3) the district court, after considering Otero's and counsel's conflicting testimony at an evidentiary hearing, rejected Otero's representation that he had directed counsel to file a notice of appeal.  Otero assumed that counsel's failure to consult with Otero after the imposition of sentence was a violation of Flores-Ortega's  "consulation" required, but "conclude[d] that Otero's trial lawyer had no constitutional duty to consult Otero about an appeal and thus did not render constitutionally ineffective assistance by failing to do so."  Otero v. United States, 499 F.3d at 1269.  This conclusion was because "under the circumstances of this case, [there was] no constitutional

---

[6] Both Otero's and Bryant's prosecutions originated in the Tampa Division of the Middle District of Florida.

duty to consult in the first place." Otero v. United States, 499 F.3d at 1269 n.1. The court's analysis weighed the plea agreement and appeal waiver heavily in the government's favor.

> In answering the question of whether a rational defendant would want to appeal his sentence, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal. See Flores-Ortega, id. at 480, 120 S.Ct. at 1036. All those factors weigh heavily in favor of the government in this case. The plea agreement signed by Otero contained a typical appeal-waiver provision, pursuant to which Otero "expressly waived the right to appeal his sentence, directly or collaterally, on any ground." This broad waiver contained four exceptions. Those exceptions allowed Otero to appeal (1) "an upward departure by the sentencing judge," (2) "a sentence above the statutory maximum," (3) "a sentence in violation of the law apart from sentencing guidelines," or (4) any sentence if the Government appealed. Otero does not argue that any of these exceptions apply in this case. Therefore, on account of the plea agreement's broad appeal waiver, any appeal taken by Otero would have been frivolous and would have been an appeal that no rational defendant would have taken.

Otero v. United States, 499 F.3d at 1271. Considering the similarity with Otero, Bryant's claim should be rejected as in Otero: "Because no rational defendant in Otero's position would have sought to appeal in light of the broad appeal waiver, and because Otero did not communicate to his lawyer a desire to appeal, we conclude that Otero's lawyer was not under a constitutional obligation to consult Otero about an appeal." Otero v. United States, 499 F.3d at 1271. Based on these facts and the analysis in Otero, Kuske had no constitutional obligation to again consult Bryant about an appeal after sentencing.

However, one fact distinguishes Otero: whether the defendant received the acceptance of responsibility reduction at sentencing as anticipated in the plea agreement. Otero's counsel advised him "that with the guilty plea he would likely receive a sentence within the guideline range of 135 to 168 months (that is, receiving acceptance of

- 13 -

responsibility and safety valve reductions), and that if he received such a sentence, there would be no promising basis to appeal." Otero v. United States, 499 F.3d at 1269 n.3. Otero's 135-month sentence included the acceptance of responsibility reduction.[7] Byrant lost the acceptance of responsibility reduction as anticipated in the plea agreement, but as discussed previously, this loss was solely because Bryant continued to engage in illegal activities while awaiting sentencing.[8] This factor should weigh against Bryant, not the government; Bryant must endure the consequences of his actions, not the government. Bryant's conduct should not allow him to avoid a condition of the plea agreement—waiving the right to appeal the calculation of sentence—because his conduct lost a sentence reduction.[9] Even with this factual difference, Otero provides the closest guidance to determine the outcome of Bryant's motion to vacate sentence.

## Conclusion

Consistent with Otero, Bryant is not entitled to a delayed appeal because (1) Bryant knew that the appeal waiver in the plea agreement precluded his appealing either the conviction or the calculation of sentence, (2) defense counsel was not under a constitutional obligation to consult with Bryant about appealing after the sentence was imposed, and (3)

---

[7] Counsel advised Otero of his intent to obtain a lesser sentence by seeking a minor role reduction, which was denied. Otero received the projected 135-month sentence and not the lower sentence counsel had advised was possible.

[8] As identified earlier, the illegal activities included arrests for grand theft of a motor vehicle, burglary of a dwelling, possessing cocaine, and obstructing an officer with violence.

[9] Although noted in the presentence report, these arrests were not factored into calculating Bryant's guideline range.

Bryant never timely requested his counsel to file a notice of appeal. Accordingly, this court recommends that the Honorable Steven D. Merryday deny Bryant's Section 2255 motion.

ORDERED in Tampa, Florida, on January 11, 2008.

_____
ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendation contained in this report within ten days from the date of service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by the district judge. See 28 U.S.C. § 636(b)(1); Rule 72, Fed. R. Civ. P.; and Local Rule 6.02.